IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MEREDITH LEE VANHOOSE,

     Petitioner,

v.                                   Case No. 3:11-cv-00448

EVELYN SEIFERT, Warden,
Northern Correctional Center,

     Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Petitioner's Petition for a Writ of Habeas Corpus by a Person in State Custody Under 28 U.S.C. § 2254, (Docket No. 1), and Respondent's Motion for Summary Judgment (Docket No. 9). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Meredith Lee VanHoose ("VanHoose") brings this petition for a writ of habeas corpus following his September 2000 convictions in the Circuit Court of Cabell County, West Virginia for first degree murder and second degree murder. VanHoose presently is incarcerated at Northern Correctional Center, serving a sentence of life imprisonment with mercy and a consecutive suspended sentence of 40 years. In support of his petition, VanHoose raises two violations of his right to a speedy trial

- 1 -

under the Sixth Amendment to the United States Constitution and one ground of ineffective assistance of counsel based upon his attorney's failure to perfect an appeal of his convictions. (*See* Docket Nos. 1, 11, and 12). For the reasons that follow, the undersigned **FINDS** that Respondent is entitled to summary judgment and, thus, **RECOMMENDS** that Respondent's motion be granted and this case be dismissed from the docket of the court.

## I.   <u>Factual History</u>

On March 25, 1998, VanHoose made a 911 call from his apartment in Huntington, West Virginia to report that his wife had just shot and killed two intruders.[1] Officers from the Huntington Police Department responded to the call and found the dead bodies of Eric Glen Smith and James Nichols Flowers in the kitchen of the VanHoose residence. The men had been shot at close range with a high-powered semi-automatic Houston 39 rifle. VanHoose told the police that he and his wife, Michelle, were at home when they heard a knock at the door. VanHoose told his wife to tell the visitors that he was not at home and he went into the bedroom. Shortly thereafter, he heard noises and when he emerged from the bedroom, he saw Smith and Flowers attacking his wife. VanHoose began fighting the men and, during the struggle, his wife retrieved a rifle that was kept in the house and shot Smith and Flowers. Evidence at the crime scene and from the Medical Examiner's autopsies indicated that Smith was shot in the temple at close range, and Flowers was shot in the back of the head. From the position of Flowers' body, it appeared that he had been initially shot in

---

[1] The facts are taken from the decision of the Supreme Court of Appeals of West Virginia ("WV Supreme Court") in *West Virginia v. VanHoose,* No. 35483 (Docket No. 9-1 at 94-135); VanHoose's Statement of Facts (Docket No. 1-1); and the Grand Jury testimony of Detective Tim Murphy (Docket No. 9-2 at 77-90).

the left arm and was crouched on the floor with his right hand shielding the back of his head when he was hit by the second and fatal shot.

The following day, VanHoose called the investigating detective and advised that he wished to change his statement about the shootings. He told the detective that he was actually the one who shot Smith and Flowers. According to VanHoose, he was in the bedroom when he heard his wife shouting. He picked up his rifle and came out of the bedroom only to witness two men attempting to sexually assault her. He shot and killed them. VanHoose admitted that he originally lied about the shootings, because he was frightened. He also thought that it was unlikely that his wife, who was still a juvenile, would be punished for the deaths.

The police officers continued their investigation of the shootings by interviewing friends of Smith and Flowers, as well as VanHoose's neighbors in the apartment complex. Through these interviews, the police learned that Smith and Flowers had met VanHoose at a vocational/technical school and had become social friends with him. The victims had been visitors at the VanHoose residence on several occasions and purportedly bought marijuana from VanHoose.  In the past, Flowers and his girlfriend had traveled to Kentucky with the VanHooses and the day before the shootings, they had visited the VanHooses at their apartment. Flowers's girlfriend knew of no problems between VanHoose and Flowers. She advised the police that Smith and Flowers had gone to Vanhoose's apartment the evening of the shootings to buy marijuana from him. In addition, VanHoose's neighbors told the police that prior to the shootings, they saw Smith and Flowers knock on VanHoose's door, and he opened the door and let them in. No one heard an argument or any sounds of a struggle. Several neighbors reported hearing conversations from the VanHoose resident

immediately after the shootings, including a female voice asking, "why, why, why did you do that to him?" and a male voice crying. After completing the investigation, the police concluded that VanHoose had shot Smith and Flowers without justification. Accordingly, on March 30, 1998, the police arrested VanHoose on charges of murdering Smith and Flowers.  On September 18, 1998, a Cabell County Grand Jury returned an indictment against VanHoose charging him with two counts of first degree murder.

II.  **Procedural History**

    A.  **Pre-conviction**

Trial on the charges contained in the indictment was scheduled to begin on January 6, 1999.[2] VanHoose was represented by appointed counsel, Mr. George Beter.[3] On the morning of trial, Mr. Beter requested a continuance to allow him the opportunity to retain expert witnesses. Consequently, trial was postponed until May 18, 1999.  On May 7, 1999, the Prosecutor moved to continue the trial date on the basis that Michelle VanHoose had filed for divorce in Kentucky[4] and wished to testify against her husband once the divorce was granted. By this time, VanHoose's parents had retained Mr. Charles Hatcher to act as co-counsel to Mr. Beter, and VanHoose had retracted his second version of the events surrounding the shootings. He now reasserted his original story that his wife retrieved the rifle and shot Smith and

---

[2] The history outlining the many continuances of the trial date is taken from VanHoose's Statement of Facts and appendices incorporated in his second response in opposition to the motion for summary judgment. ( *See* Docket Nos. 12 at 11-23; 12-1; 12-2; 12-3 ).

[3] Mr. Beter was the third appointed lawyer to represent VanHoose. His first two appointed lawyers, Ed Harmon and J. Roger Smith, withdrew by Order entered November 24, 1998.  Mr. Beter was appointed on December 7, 1998 and trial was rescheduled at that time from December 7, 1998 to January 6, 1999. (Docket 12 at 13-14).

[4] The VanHooses were married in Kentucky in 1996.  (Docket No. 9-1 at 105).

Flowers. Realizing that he and his wife were the only witnesses to the shootings, VanHoose filed a motion to preclude her testimony pursuant to the marital testimonial privilege codified in West Virginia Code § 57-3-3 *et seq.*[5]  As long as Michelle remained married to VanHoose, she was precluded from testifying against him. The trial court granted the prosecution's motion, continued the trial date, and held in abeyance the resetting of the trial to allow time for the divorce proceedings to conclude. Later that month at a status conference, the court rescheduled the trial to begin on August 24, 1999. Another status conference was held by the court on June 29, 1999. At this proceeding, Mr. Hatcher advised the court that he intended to represent VanHoose in the Kentucky divorce and take the deposition of Michelle VanHoose. The court warned Mr. Hatcher that if his representation of VanHoose delayed the granting of the divorce, the trial would again be continued until the divorce was final so that Mrs. VanHoose would be free to testify. The court emphasized that the defense accused Mrs. VanHoose of the shootings; therefore, she had a right to testify for the prosecution. (Docket No. 12-2 at 41-42). On July 13, 1999, the court conducted a similar status conference and

---

[5] The relevant code sections provide as follows:

**§ 57-3-3. Testimony of husband and wife in criminal cases**

In criminal cases husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor, without the consent of the other, allowed to be called as a witness against the other except in the case of a prosecution for an offense committed by one against the other, or against the child, father, mother, sister or brother of either of them. The failure of either husband or wife to testify, however, shall create no presumption against the accused, nor be the subject of any comment before the court or jury by anyone.

**§ 57-3-4. Confidential communications between husband and wife**

Neither husband nor wife shall, without the consent of the other, be examined in any case as to any confidential communication made by one to the other while married, nor shall either be permitted, without such consent, to reveal in testimony after the marriage relation ceases any such communication made while the marriage existed.

was again told that VanHoose's divorce was not yet granted and was not expected to be final before the August trial date. Upon learning of this development, the court stated:

> You all [defense counsel] stood up in here and said that he didn't do the killing; she did the killing.  And I just said, you know, if she wants to get a divorce and testify, she should have the right to do that.  I know he has rights, too; but people also have rights.

(Docket No. 12-2 at 47).

On September 27, 1999 and November 2, 1999, VanHoose filed Motions for a Speedy Trial, arguing that West Virginia Code § 62-3-1 entitled him to have his trial within the same term of court as his indictment was returned.[6] The court denied the Motions, concluding that West Virginia Code § 62-3-21 controlled VanHoose's right to a speedy trial.[7] Under this statute, VanHoose would be forever discharged from prosecution for the charges in the indictment if his trial did not occur within three

---

[6] The statute reads in relevant part:

**§ 62-3-1. Time for trial; depositions of witnesses for accused; counsel, copy of indictment, and list of jurors for accused; remuneration of appointed counsel**

When an indictment is found in any county, against a person for a felony or misdemeanor, the accused, if in custody, or if he appear in discharge of his recognizance, or voluntarily, shall, unless good cause be shown for a continuance, be tried at the same term.

[7] The section reads as follows:

**§ 62-3-21. Discharge for failure to try within certain time**

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict; and every person charged with a misdemeanor before a justice of the peace, city police judge, or any other inferior tribunal, and who has therein been found guilty and has appealed his conviction of guilt and sentence to a court of record, shall be forever discharged from further prosecution for the offense set forth in the warrant against him, if after his having appealed such conviction and sentence, there be three regular terms of such court without a trial, unless the failure to try him was for one of the causes hereinabove set forth relating to proceedings on indictment.

regular terms of court, unless one of the enumerated exceptions applied to extend the time frame. The Court set trial to begin on January 25, 2000.  On January 25, 2000, the court learned that the VanHooses's divorce had again been delayed due to custody issues. Accordingly, the court continued the trial date to allow Mrs. VanHoose the opportunity to obtain a bifurcation of the divorce and custody issues, which would allow her to obtain a divorce without waiting for resolution of the remaining issues. A status conference was set on February 22, 2000. At this hearing, the court was advised that a hearing on bifurcation had been set in the divorce proceeding on March 3, 2000, and a hearing on the divorce was scheduled on March 15, 2000. As a result, the court held the trial date in abeyance pending conclusion of those hearings. Ultimately, trial was scheduled to begin on April 27, 2000.

On April 20, 2000, the trial court conducted another status conference in the criminal action. The parties reported that Mrs. VanHoose had been successful on her motion to bifurcate and had been granted a divorce. However, VanHoose intended to appeal the divorce commissioner's decision. According to Mr. Hatcher, "[t]hat, in essence, means under Kentucky law that they are not divorced."  (Docket No. 12-3 at 30).  Upon learning of this development, the Court stated:

> I don't – I still have trouble understanding why the defendant wanted to contest the divorce other than the fact that she would not – she would be prevented from testifying against him.  I am sure these people don't have any assets.  The only thing they have got is this child or children ... If the defendant is going to appeal the decision of the Judge in granting a divorce, then I am going to find good cause again to continue it [the criminal trial] to the next Term of court; and I'm going to go ahead and set it for trial.

(Docket No. 12-2  at 32). Trial was scheduled to begin on August 29, 2000 and was later moved to September 8, 2000.

On September 1, 2000, VanHoose filed a petition for a writ of prohibition with the Supreme Court of Appeals of West Virginia ("WV Supreme Court") seeking a dismissal of his case on the ground that his right to a speedy trial had been violated and dismissal was warranted under West Virginia Code §§ 62-3-1 and 62-3-21. The WV Supreme Court refused the petition on September 7, 2000.  (Docket No. 9-1 at 107). On that same day, VanHoose entered a conditional plea of guilty to one count of first degree murder and one count of second degree murder. As a condition of the plea, VanHoose retained his right to pursue an appeal and/or a collateral action challenging the validity of his convictions in light of West Virginia's statutes governing the right to a speedy trial. (*Id.*). On September 8, 2000, VanHoose was sentenced to life imprisonment with mercy followed by a forty year sentence of imprisonment, which was suspended, and five years of probation. George Beter was reappointed to represent VanHoose on his appeal.

### B.    Post-conviction

On March 21, 2001, Mr. Beter filed a motion seeking an extension of time in which to perfect VanHoose's appeal, arguing that the necessary transcripts were not yet completed by the official court reporter.[8] (Docket 9-1 at 108). The Motion was granted, and the appeal deadline was extended to May 2, 2001. Thereafter, Mr. Beter was forced to file three additional motions for an extension of time while he awaited the transcripts, all of which were granted. The final deadline for filing VanHoose's appeal was extended to October 31, 2001.  (*Id.*).

On September 19, 2001, Mr. Beter filed a motion to withdraw as counsel, representing that irreconcilable differences had arisen between him and VanHoose

---

[8] Mr. Beter timely filed a Notice of Appeal, but could not perfect the appeal without the transcripts.

regarding appellate strategy. On October 12, 2001, VanHoose wrote a letter to the court agreeing that Mr. Beter should be permitted to withdraw and requesting the appointment of new counsel. The Court entered an order on November 21, 2001, allowing Mr. Beter to withdraw and appointing Mr. Steve Jarrell as VanHoose's new appellate counsel. (Docket 9-1 at 108-110). The record reflects that the appointment order was not sent to Mr. Jarrell, and he never entered an appearance in the case. On March 21, 2002, VanHoose filed a motion for the appointment of counsel to represent him on a petition for a writ of habeas corpus that he had filed in state court. That same day, Mr. Courtney Craig was appointed to represent VanHoose on the habeas petition, although Mr. Craig also failed to receive the appointment order. (Docket 9-1 at 108-110). Eventually, Mr. Craig was notified of his appointment, and he entered an appearance.[9] On January 26, 2005, he filed a memorandum in support of VanHoose's habeas petition. The petition was denied on June 8, 2006. However, the state court contemporaneously entered a resentencing order to allow VanHoose an opportunity to appeal his conviction. VanHoose did not appeal the habeas ruling or his conviction at that time.[10]

On January 14, 2008, VanHoose filed a second petition for a writ of habeas corpus in state court, alleging a violation of his right to a speedy trial and ineffective assistance of counsel based upon the 2001 failure of Mr. Beter to perfect VanHoose's appeal of his convictions. After conducting an omnibus hearing, the state habeas court

[9] According to the opinion of the WV Supreme Court, several additional attorneys were appointed to represent VanHoose at various times between March 21, 2002 and January 26, 2005. The record is not well-documented as to why multiple attorneys were appointed, why they withdrew, or how Mr. Craig ultimately became aware of the appointment order. (Docket 9-1 at 109-10).

[10] On October 16, 2006, VanHoose filed a motion to remove Mr. Craig as his counsel. On November 30, 2006, Mr. Sean Maynard was appointed to represent Mr. VanHoose. Mr. Maynard withdrew on March 7, 2007 and was replaced by Mr. Ron Salmons. (Docket 9-1 at 14).

denied VanHoose's petition, but again entered a resentencing order to allow him the opportunity to appeal his convictions.[11] On November 19, 2009, VanHoose presented a petition for appeal to the WV Supreme Court, requesting direct appeal of his convictions and an appeal of the denial of his second habeas petition. The appeals were consolidated by the Court for purposes of briefing, argument, and decision. (Docket No. 9-1 at 22). By decision dated October 14, 2010, the WV Supreme Court denied relief to VanHoose on both appeals. (Docket No. 9-1 at 94-135). On the direct appeal of the convictions, the WV Supreme Court found that VanHoose had not been denied the right to a speedy trial. On the habeas appeal, the WV Supreme Court determined that VanHoose failed to establish ineffective assistance of counsel and, thus, was not entitled to habeas relief. (*Id.*).

VanHoose filed a *pro se* petition for a writ of habeas corpus in this court on June 27, 2011. (Docket No. 1). Respondent filed a motion for summary judgment on July 29, 2011 with a supporting memorandum. (Docket Nos. 9 and 10). Before the Court had an opportunity to issue a notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), VanHoose filed "replies" to the motion for summary judgment. (Docket Nos. 11 and 12).[12] Having reviewed the replies and the other materials submitted by VanHoose, the undersigned finds that he has adequately fulfilled his obligations under Fed. R. Civ. P. 56; thus, this motion is ripe for resolution.[13]

---

[11] The second petition alleged precisely the same issues that were raised in the first petition, which was dismissed by the original habeas court and never appealed.   (Docket No. 9-1 at 111).

[12] A *Roseboro* notice advises a *pro se* litigant of his right and responsibility to respond to a motion for summary judgment.

[13] Respondent concedes that VanHoose filed his federal habeas petition within the one year statute of limitations prescribed by 28 U.S.C. § 2254. (Docket No. 8 at 1).  The undersigned questions the accuracy of Respondent's calculation; particularly, in view of VanHoose's failure to appeal the June 2006 orders. Nonetheless, a review of the merits of Vanhoose's federal petition follows.

### III.   Petitioner's Challenges to his Custody and Sentence

VanHoose alleges that he is entitled to federal habeas relief on the following three grounds:

> 1.     He was denied his right to a speedy trial under West Virginia's "three terms of court rule" contained in West Virginia Code § 62-3-21;
>
> 2.     He was denied his right to a speedy trial under West Virginia's "one term court rules and statute" contained in West Virginia Code § 62-3-1; and
>
> 3.     His appellate counsel, Mr. George Beter, provided ineffective assistance of counsel when he failed to perfect VanHoose's direct appeal of his convictions.

(Docket No. 1).   VanHoose requests that this court "dismiss his conditional plea and sentence, release him from his incarceration and pursuant to each cited West Virginia Code, and Grounds raised, forever discharge him from prosecution and award him such other relief this Honorable Court deems just and appropriate."  (Docket No. 1-1 at 31).

### IV.   Standard of Review

#### A.     Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Motions for summary judgment impose a heavy burden on the moving party; for, it must be obvious that no material facts are in dispute and no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir. 1990).

Nonetheless, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). While any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587-88 (1986), "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987). In the instant action, Respondent has filed a motion for summary judgment and asserts that the facts material to disposition are not in dispute. In response, VanHoose does not allege the existence of disputed facts; instead, he contends that the documents before the Court provide convincing and conclusive proof that he is entitled to a writ of habeas corpus. From independent review, the undersigned agrees that the record is sufficient and no genuine issues of material fact exist that would prevent resolution of VanHoose's petition for a writ of habeas corpus.

## B.    Petitions Seeking Habeas Relief Under § 2254

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, authorizes a federal district court to entertain a petition for habeas corpus relief from a prisoner in State custody, "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Subsection (d) of § 2254 provides that an application for a writ of habeas corpus by a person in State custody "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim" is:

(1) contrary to, or involves an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d)(1) and (2); *see also Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). When reviewing a petition under § 2254, the federal court uses "a highly deferential lens." *DeCastro v. Branker,* 642 F.3d 442, 449 (4th Cir. 2011). As such, factual determinations made by the state court are presumed to be correct and are only rebutted upon presentation of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams,* 529 U.S. at 405. A federal court may grant habeas relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than the [United States Supreme] Court has on a set of materially indistinguishable facts." *Lewis v. Wheeler*, 609 F.3d 291, 300 (4th Cir. 2010) (citing *Williams,* 529 U.S. at 413). A habeas writ may be granted under the "unreasonable application" clause "if the State court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lewis v. Wheeler*, 609 F.3d 291 at 300–01 (citing *Williams,* 529 U.S. at 413). Thus, the AEDPA limits the habeas court's review to the reasonableness rather than the correctness of the state court's decision. A federal court may not issue a writ under this standard "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather the application must also be

unreasonable." *Williams*, 529 U.S. at 411.  Moreover, as discussed in greater detail in Part B of the Analysis section, *infra,* the standard of review under the § 2254 unreasonable application clause in the context of an ineffective assistance of counsel claim is considerably more focused and emphasizes the deference that must be given to a state court's determinations. *See Harrington v. Richter,* _ U.S. _, 131 S.Ct. 770, 778, 178 L.Ed.2d 624 (2011).

## V.  <u>Analysis</u>

### A.   **Right to a Speedy Trial**

VanHoose argues that the State's failure to complete his trial within the time frames established by West Virginia Code §§ 62-3-1 and 62-3-21 violated his Sixth Amendment right to a speedy trial. According to VanHoose, he is entitled to have his convictions set aside because the charges against him should have been dismissed pursuant to these statutes. He further contends that the WV Supreme Court unreasonably applied federal precedent to the facts of his case. Accordingly, he asserts that he is entitled to relief under § 2254.

In his direct appeal to the WV Supreme Court, VanHoose raised these same challenges to his convictions. After fully considering his arguments, the WV Supreme Court determined that VanHoose was not denied the right to a speedy trial and upheld his convictions.[14] In explaining its decision, the Court began by acknowledging that "[t]he right to a trial without unreasonable delay is basic in the administration of criminal justice and is guaranteed by both the State and federal constitution." (Docket No. 9-1 at 113). The Court then applied a four factor test adopted from the decision of

---

[14] The undersigned will not address the WV Supreme Court's interpretation and application of the West Virginia code sections.  As Respondent correctly argues, alleged violations of state law do not raise an issue under 28 U.S.C. § 2254.  Section 2254 applies only to those claims of State prisoners, which allege violations of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

the Supreme Court of the United States ("US Supreme Court") in *Barker v. Wingo,* 407
U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) to evaluate the validity of VanHoose's
claim and concluded that "[c]onsidering all the factors as a whole, we find that Mr.
VanHoose's right to a speedy trial was not violated because the delay was attributable
to his conduct in preventing a material witness for the State from testifying."  (Docket
No. 9-1 at 126).

After stated *supra,* on federal habeas review, this court is charged only with
ascertaining whether the state court's determination was contrary to, or involved an
unreasonable application of, clearly established federal law. Based upon the record
before this court, the undersigned **FINDS** that the state court identified the correct
governing legal principle from the US Supreme Court's decisions and reasonably
applied that principle to the facts of VanHoose's case. Therefore, Respondent is
entitled to summary judgment on this claim.

In *Barker v. Wingo*, the US Supreme Court confirmed the well-established
principle that the right to a speedy trial is guaranteed by the Sixth Amendment to the
United States Constitution and "is imposed by the Due Process Clause of the
Fourteenth Amendment on the States." *Barker,* 407 U.S. at 515, *citing Kloper v. North
Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed. 1 (1967).  Nonetheless, the Court noted
that it had never "attempted to set out criteria by which the speedy trial right is to be
judged." *Id.* at 516, *citing Dickey v. Florida,* 398 U.S. 30, 40-41, 90 S.Ct. 1564, 26
L.E.2d 26 (1970). Consequently, the Court undertook that task and developed a four
factor balancing test to apply on an *ad hoc* basis when assessing whether a particular
defendant was deprived of his right to a speedy trial. The four factors identified by the
Court included the length of the delay; the reason for the delay; the defendant's

assertion of his right to a speedy trial; and the prejudice to the defendant flowing from the delay. *Id.* at 530. Later, the US Supreme Court clarified that these factors were best addressed by making four separate inquiries: (1) was the delay before trial "uncommonly long;" (2) was the government or the defendant "more to blame for that delay;" (3) did the defendant assert his right to a speedy trial in "due course;" and (4) did the defendant suffer "prejudice as the delay's result." *Doggett v. United States,* 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). To prevail on a speedy trial claim, the defendant must establish that "on balance, [the] four separate factors weigh in his favor." *United States v. Hall,* 551 F.3d 257, 271 (4th Cir. 2009), *quoting United States v. Thomas,* 55 F.3d 144, 148 (4th Cir. 1995).

The initial inquiry serves two purposes. First, it creates a threshold; the court need not conduct a full speedy trial analysis unless the delay is sufficiently long to be "presumptively prejudicial ... since, by definition, [defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett,* 505 U.S. at 652, *quoting Barker,* 407 U.S. 530-31. The length of the delay is measured from the return of an indictment to the start of trial, as the right to a speedy trial "does not protect a defendant from a pre-indictment delay." *Hall,* 551 F.3d at 271. Generally, a delay approaching one year satisfies the threshold and triggers an in-depth speedy trial analysis. *Doggett,* 505 U.S. at 652, n.1. Second, the length of the delay acts as a yardstick by which the court measures prejudice.  Once the length of delay crosses into the realm of presumptively prejudicial, the court considers "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim," bearing in mind that the longer the delay, the greater the likelihood of prejudice. *Doggett,* 505 U.S. at 652 (holding

"There is a presumption that prejudice flowing from the delay "intensifies over time.").

When examining the length of delay in VanHoose's case, the parties agree that VanHoose was indicted on September 18, 1998 and pled guilty on September 7, 2000, approximately two years later. Without a doubt, such a delay crossed the threshold dividing ordinary from presumptively prejudicial delay and prompted further assessment of whether VanHoose suffered a constitutional deprivation of his right to a speedy trial. The WV Supreme Court properly weighed this factor in favor of VanHoose, finding that "the delay in this case is sufficient to continue the [*Barker*] analysis." (Docket No. 9-1 at 118).

The second *Barker* inquiry requires the reviewing court to identify the reason for the delay. "[P]retrial delay is often both inevitable and wholly justifiable." *Doggett,* 505 U.S. at 656. Nonetheless, the court must scrutinize the motive of the prosecution in causing a delay and assign it a level of fault on a continuum ranging from justified to unjustified. As the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") explained:

> The reasons for a trial delay should be characterized as either valid, improper or neutral.  On this factor, a reviewing court must carefully examine several issues, specifically focusing on the intent of the prosecution. For example, a deliberate attempt by the prosecution to delay the trial of an accused would weigh heavily against the government, although a valid reason for delay, such as a missing witness, may be justified.

*United States v. Hall,* 551 F.3d at 272 (internal citations ommitted). Certainly, delay occasioned by the prosecution "to gain some tactical advantage over defendants or to harass them," is improper and will weigh heavily against the government. In contrast, delay caused by overcrowded courts carries little weight, while the absence of a material witness "should serve to justify appropriate delay." *Barker,* 407 U.S. at 531,

*citing United States v. Marion,* 404 U.S. 307, 325, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

An integral piece of information in assigning weight under this factor is the diligence of the prosecution in bringing the defendant to trial.  Moreover, action or inaction by the defendant, which contributes to or produces delay, is also a consideration. *Doggett,* 505 U.S. at 651.

In the present case, the WV Supreme Court concluded that all of the continuances sought by the prosecution "were based upon the unavailability of a witness: Mrs. VanHoose." (Docket No. 9-1 at 118). The Court observed that the unavailability of a witness constitutes a justifiable reason to delay trial when the witness is material and the prosecution has been diligent in trying to secure the witness' appearance. The Court noted that VanHoose's defense rested predominantly upon his accusation that Mrs. VanHoose committed the killings. In support, VanHoose relied upon statements made by Mrs. VanHoose to the police in which she claimed responsibility for retrieving and using the rifle. As a result, the Court found that Mrs. VanHoose was a material witness, both to deny that she committed the murders and to explain her contrary statements to the police. The Court further found that the prosecution had diligently tried to procure Mrs. VanHoose's testimony, but was hindered by VanHoose's efforts to delay his divorce while simultaneously asserting the marital testimonial privilege, which effectively silenced Mrs. VanHoose as long as she remained married to him. In the end, the WV Supreme Court decided that this factor weighed heavily in favor of the prosecution and justified delay of the trial.  The Court held:

> We agree with Mr. VanHoose that he did not have to waive his marital testimonial privilege so that Mrs. VanHoose could testify against him. However, we disagree with Mr. VanHoose's assertion that the State could

not seek continuances until Mrs. VanHoose was available to testify against him.  Insofar as Mr. VanHoose could invoke his statutory right to preclude his wife from testifying against him, the State could likewise invoke its right to seek continuances because of the unavailability of a material witness.

(Docket No. 9-1 at 122).

In opposition, VanHoose essentially makes two arguments. First, he points out that the prosecution represented that it was ready for trial on January 6, 1999 when defendant made his only request for a continuance. At that time, the prosecution was prepared to go forward without the testimony of Mrs. VanHoose as she did not express her desire to divorce and testify until May 1999.  If Mrs. VanHoose was not considered an essential witness in January, then her continued unavailability did not provide a valid basis for a two-year delay. Second, he contends that the trial court acted improperly in forcing him to choose between his statutory right to invoke the marital testimonial privilege and his constitutional right to a speedy trial.

In evaluating the reasonableness of the WV Supreme Court's finding, the undersigned takes note of the record; particularly, the portions of the hearing transcripts attached to VanHoose's opposition memorandum. (Docket No. 12). The transcripts make clear that VanHoose intentionally impeded the divorce proceedings in an effort to either prevent his wife from testifying against him or to escape prosecution altogether under West Virginia's speedy trial statutes. If he had not manipulated the natural progression of the divorce, he likely would have received a trial within a year after his indictment. Instead, VanHoose's criminal defense counsel pressed for a speedy trial while simultaneously strategizing with VanHoose's divorce lawyer to take whatever steps would prevent the divorce from being final and, thus, prevent the only other witness to the murders from being free to testify. The trial court

- 19 -

repeatedly advised VanHoose that this strategy would not work and trial would not occur until Mrs. VanHoose was legally able to testify. Both the court and the prosecution were diligent in their efforts to bring the case to trial. The delay was caused not by VanHoose's assertion of the marital testimonial privilege, but by his intentional efforts to hinder the finalization of his divorce for tactical advantage in his criminal prosecution. Consequently, the state court's determination that Mrs. VanHoose's unavailability was justifiable cause for the delay was not an unreasonable application of clearly established federal law.

Turning to the third *Barker* factor, the WV Supreme Court found, and the undersigned agrees, that Vanhoose was persistent in asserting his right to a speedy trial. As such, this factor weighs in his favor.

The final factor to be considered by the court is the prejudice to Vanhoose that accompanied the delay. Prejudice is assessed "in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker,* 407 U.S. at 532. "On this point, the [US] Supreme Court has identified three defense interests for consideration: (1) whether there was an oppressive pretrial incarceration; (2) the anxiety and concern suffered by the accused; and (3) the possibility that the defense was impaired." *United States v. Hall,* 551 F.3d at 272, *citing Barker,* 407 U.S. at 532. Of these three interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker,* 407 U.S. at 532.

In looking at the three interests that comprise the fourth factor, certainly the first two are the most subjective and amorphous. Undoubtedly, some would argue that even one day of incarceration is oppressive; particularly, if the prisoner is later found

innocent of the charges levied against him. Nevertheless, the Fourth Circuit has found that pretrial incarceration for periods of sixteen months, twenty-two months, and two years are "not uncommonly long." *See United States v. Bryant,* 417 Fed. Appx 220 (4th Cir. 2008) (unpublished *per curiam* opinion), *citing United States v. Hopkins,* 310 F.3d 145, 150 (4th Cir. 2002). In this case, Vanhoose was incarcerated approximately two and half years before entering his guilty plea; six of those months were pre-indictment incarceration. The WV Supreme Court did not consider this period of incarceration to constitute significant prejudice to VanHoose, and the undersigned does not find this determination to be objectively unreasonable. Likewise, the WV Supreme Court did not find, and VanHoose did not complain of anxiety or concern greater than that usually faced by a person charged with having committed two murders.

In regard to the final defense interest, VanHoose claims that two crucial defense witnesses died during the delay; thereby, impeding his ability to present a persuasive defense. When evaluating the prejudice to VanHoose, the WV Supreme Court accepted his representation that two of his witnesses had died during the delay. However, the Court did not find this factor to weigh in VanHoose's favor, because he failed to "state who those witnesses were and what testimony those witnesses would have given." The Court added, "[w]ithout any indication as to who the witnesses were and what evidence they would have produced, we cannot find prejudice from a bare assertion that two witnesses died."  (Docket No. 9-1 at 125).[15]

In his filings here, VanHoose has identified the deceased witnesses as Georgana

---

[15]  Indeed, the memorandum filed by VanHoose in support of his appeals to the WV Supreme Court did not extrapolate on his unsupported claim that two defense witnesses died during the delay.

Cook and Glen Verbage. VanHoose contends that Ms. Cook could have testified about a conversation she had with Mrs. VanHoose shortly after the murders in which Mrs. VanHoose admitted to shooting Smith and Flowers when they tried to rape her. VanHoose further alleges that Glen Verbage, the county magistrate who presided over Vanhoose's preliminary hearing, could provide testimony to impeach the credibility of the investigating detective. VanHoose alleges that the investigating detective testified at the preliminary hearing that he saw signs of a struggle at the crime scene and thought Mrs. VanHoose was likely the shooter. In anticipation that the detective would alter his testimony at trial, VanHoose's attorney attempted to obtain a transcript of the preliminary hearing. However, he was told that the recording device had malfunctioned and did not record the proceeding. Consequently, Mr. Verbage's testimony regarding the detective's initial opinions as expressed at the preliminary hearing was essential to bolster VanHoose's defense.  Before weighing the prejudice that purportedly accompanied the deaths of Ms. Cook and Mr. Verbage, the undersigned must consider the propriety of judging the WV Supreme Court's finding based upon information that was available to VanHoose at the time, but was inexplicably omitted from the record submitted to the WV Supreme Court. The US Supreme Court recently admonished federal habeas courts to keep in mind the statutory limitations of their role when reviewing §2254(d)(1) claims,  reminding them that, "[a]lthough state prisoners may sometimes submit new evidence in federal court, AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Cullen v. Pinholster,* 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011).  When analyzing a state court's rejection of a state's prisoner's claim, the federal habeas court is "limited to the record that was before the state court that adjudicated the claim on the merits."

*Id.* The Supreme Court explained that the "backward-looking language" of § 2254(d) "requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.,* the record before the state court." Indeed, provisions like §§ 2254(d)(1) and (e)(2) ensure that '[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.'" *Cullen,* 131 S.Ct. at 1401, citing *Williams v. Taylor,* 529 U.S. 420, 437, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). *See, also, Cullen,* 131 S.Ct. at 1388 ("Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief. It would be contrary to that purpose to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*"); *Elmore v. Ozmint,* 661 F.3d 783, 850 (4th Cir. 2011); *Blue v. Thaler,* ___ F.3d ___, 2011 WL 6413368 n. 29 (5th Cir. December 22, 2011) (citing *Pinholster,* 131 S.Ct. at 1412 (Breyer, J., concurring in part and dissenting in part), "there is no role in [the] analysis under § 2254(d)] for a habeas petitioner to introduce evidence that was not first presented to the state courts."); *Brown v. Wernerowicz,* ___F.3d ___, 2011 WL 6091408 (3rd Cir. Dec. 8, 2011) ("In light of *Pinholster,* district courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. 2254(d)"); *Sheppard v. Bagley,* 657 F.3d 338 (6th Cir. 2011). Accordingly, § 2254(d) simply does not permit this court to assess the reasonableness of the WV Supreme Court's findings based on evidence that was not, but could have been, before it at the time it adjudicated the issues. Considering the record as it appeared to the WV Supreme Court, VanHoose failed to demonstrate prejudice. Therefore, the

determination of the WV Supreme Court that this *Barker* factor did not weigh in VanHoose's favor was not objectively unreasonable.

Assuming, *arguendo*, that VanHoose had provided this information to the WV Supreme Court, it is unlikely that the Court's decision would have been different. Although VanHoose has fleshed out his claim of prejudice in this court, he continues to lack any corroboration to support his version of the deceased witnesses' anticipated testimony or their importance to the defense. Nothing in the record suggests that Mr. Verbage had a similar recall of the detective's testimony. Even assuming that he did, VanHoose's presupposition that the detective would deny or alter his testimony at trial is nothing more than speculation. Moreover, despite Mr. Verbage's death, VanHoose still had access to a least one witness whose testimony could have challenged any inconsistent statements by the detective. VanHoose's lawyer at the time of the preliminary hearing was substituted shortly thereafter; he potentially could have testified as a rebuttal witness. Finally, Mr. Verbage died prior to May 18, 1999,[16] the date on which the trial was rescheduled after VanHoose's initial request for a continuance. Accordingly, Mr. Verbage would not have been available for trial even if the prosecution had never requested a continuance and the trial had proceeded on schedule.[17]  Similarly, nothing in the record indicates that Ms. Cook would have given testimony supportive of VanHoose's story that his wife killed the victims. To the contrary, according to Grand Jury testimony by investigating officer Detective Tim

---

[16]  According to a March 19, 1999 press release issued by the WV Supreme Court announcing the appointment of a magistrate to replace him, Mr. Verbage had recently passed away.   See, www.wvcourts.gov.

[17] VanHoose's trial was scheduled on January 9, 1999 and was continued at the request of his counsel to May 18, 1999.

Murphy, Ms. Cook reported having a conversation with Mrs. VanHoose in which Mrs. VanHoose confirmed that her husband shot the victims because they were attacking her. (Docket No. 9-2 at 81). Furthermore, even if Ms. Cook testified as VanHoose represents, at best this testimony would have been duplicative of statements made by Mrs. VanHoose to the police. Those statements were always available for VanHoose's use at trial. Therefore, VanHoose is hard-pressed to demonstrate any appreciable prejudice to his defense arising from the death of these potential witnesses.

In summary, when weighing the four factors, the WV Supreme Court clearly placed more weight on the reason for the delay than on any of the other *Barker* factors, holding:

> Considering all of the factors as a whole, we find that Mr. VanHoose's right to a speedy trial was not violated because the delay was attributable to his conduct in preventing a material witness for the State from testifying. The conduct by Mr. VanHoose established good cause ... for the State to seek continuances in this case.

(Docket No. 9-1 at 127). "[T]hese factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Barker,* 407 U.S. at 533. The WV Supreme Court carefully balanced the applicable factors and found that VanHoose caused the delays about which he complains; therefore, he was not denied the right to a speedy trial. Having considered the state court's application of the relevant federal precedent, the undersigned **FINDS** that the state court's denial of VanHoose's speedy trial claim was neither objectively unreasonable, nor clearly contrary to established federal law. Therefore, Respondent is entitled to summary judgment on this ground.

**B.     Ineffective Assistance of Counsel**

VanHoose argues that his first appellate attorney, Mr. George Beter, provided ineffective assistance of counsel by failing to perfect an appeal of his conviction.

Applying the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the WV Supreme Court concluded that VanHoose did not demonstrate "that Mr. Beter was deficient in his appellate representation." (Docket No. 9-1 at 131). Having failed to substantiate the first prong of *Strickland,* VanHoose's claim of ineffective assistance of counsel was rejected.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Id.* at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687-91. Counsel's performance should be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time," *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). "[C]ourt[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" *Id.* (internal quotation marks omitted).

In a § 2254 proceeding, the standard of review differs slightly from the standard used in the direct review of a *Strickland*-based challenge. *Harrington,* 131 S.Ct. at 778. "The standard created by *Strickland* and § 2254(d) are both 'highly deferential' ...

when the two apply in tandem review is 'doubly' so." *Id.* at 788. Instead of asking whether defense counsel's performance fell below an objectively reasonable standard, the federal reviewing court must determine "what arguments or theories supported, or could have supported the state-court decision; and then ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with a prior decision of [the United States Supreme] Court." *Id.* "A state court's determination that a [*Strickland*] claim lacks merit **precludes** federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of that decision." *Id.* at 786-87*, citing Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (emphasis added). Thus, the "question under § 2254(d) is not whether counsel's actions were reasonable, but whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

In making its determination, the WV Supreme Court relied heavily upon the testimony of Mr. Beter and Mr. Courtney Craig. The Court found that:

> "[D]uring the time Mr. Beter was appellate counsel, he took the necessary actions that a reasonable criminal defense attorney would take to obtain transcripts of the hearings conducted in the case. As a result of delays in receiving the transcripts, Mr. Beter filed motions to extend the appeal period. All of the appeal extension motions were granted. Further the evidence at the habeas proceeding clearly showed that Mr. VanHoose caused the attorney-client relationship to break down to the point of preventing Mr. Beter from actually filing an appeal. Moreover, after Mr. VanHoose requested the trial court to remove Mr. Beter as appellate counsel, Mr. VanHoose abandoned his direct appeal and chose to pursue two habeas challenges of his conviction. "

(Docket No. 9-1 at 134). The WV Supreme Court decided that VanHoose effectively released Mr. Beter from his obligation to perfect the appeal by refusing to approve the appellate arguments proposed by Mr. Beter. Thereafter, when Mr. Craig was appointed to represent him, VanHoose had the option of simply requesting a resentencing order

and proceeding with his direct appeal,[18] but instead decided, after consultation with Mr. Craig, to move on to a collateral attack of the convictions and a claim of ineffective assistance of counsel. Accordingly, the WV Supreme Court found that VanHoose had strategically abandoned his right to appeal in order to file a "spurious habeas argument." (Docket No. 9-1 at 135). As such, he knowingly and intentionally waived that right and could not now argue that Mr. Beter was deficient for failing to protect it. (*Id.*).

In *Roe v. Flores-Ortega,* 528 U.S. 470, 477, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the US Supreme Court noted, "[w]e have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable," *citing Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.E.2d 340 (1969). "At the other end of the spectrum, a defendant who explicitly tells his attorney *not* to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id., citing Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed2d 987 (1983).

Here, VanHoose unequivocally instructed Mr. Beter to file a notice of appeal, and Mr. Beter indisputably complied with that instruction. Based upon the testimony offered at the omnibus hearing in VanHoose's state habeas proceeding, the WV Supreme Court found that, thereafter, VanHoose "caused the attorney-client relationship to break down to the point of preventing Mr. Beter from actually filing an appeal." (Docket No. 9-1 at 134). Simply stated, VanHoose instructed Mr. Beter not to perfect the appeal, because VanHoose wanted another attorney to do it. The Court's

---

[18]  A resentencing order would have restarted the ninety days in which to perfect an appeal to the WV Supreme Court.

conclusion is supported by Mr. Beter, who testified that he told VanHoose as early as August 22, 2001 that he was moving to withdraw from the case due to their inability to agree on the content of the appellate brief. Mr. Beter also communicated that he did not intend to perfect the appeal on behalf of VanHoose and, instead, would close his file. Mr. Beter then provided VanHoose with a list of the transcripts that had been prepared and indicated that he would copy them and send them to VanHoose. (Docket No. 9-2 at 29-30). Finally, on September 19, 2001, after several communications with VanHoose, Mr. Beter submitted an Order to the trial court granting his motion to withdraw. In response, VanHoose confirmed the existence of irreconcilable differences and asked the court to appoint new counsel to represent him on the appeal. VanHoose never approved the appellate strategy recommended by Mr. Beter nor authorized him to proceed with perfecting the appeal.  According to Mr. Beter:

> And at that time apparently after the transcripts were really available he [VanHoose] was requesting that I withdraw, and I wasn't going to file a motion or an actual appeal if he was dissatisfied with me and alleged irreconcilable differences.  And I said, "Well, that's it.  I am not going to file the appeal" ...  See, even in October the defendant communicated directly with the Court requesting new counsel. So, that is the culmination of the correspondence between him and me and his expression that he was dissatisfied with me because of irreconcilable differences because we disagreed as to what we were going to do, and he wanted all of the records and my files and so forth and I wasn't going to do that.  So, I had some resistance; and he wanted specifically to pre-agree and okay everything I did before I filed it.  And so we --- we had had a disagreement, and he didn't like it.  And that's when he asked me to come – to retire from the case.

(Docket No. 9-1 at 25, 27-28). In light of the requirements of 28 U.S.C. § 2254(e)(1), the undersigned must presume the correctness of the WV Supreme Court's findings of fact unless VanHoose rebuts them by clear and convincing evidence to the contrary. Inasmuch as VanHoose offers no evidence to rebut the Court's finding that he severed

the attorney-client relationship with Mr. Beter prior to expiration of the appeals deadline and effectively prevented Mr. Beter from perfecting the appeal, the undersigned accepts that finding.  Accordingly, VanHoose cannot now complain that "by following his instructions, his counsel performed deficiently." *Flores-Ortega,* 528 U.S. at 477.

Even supposing that VanHoose could establish ineffective assistance of counsel, he has already received the only appropriate remedy that this court could grant.  As stated in *Flores-Ortega,* 528 U.S. at 477, "[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit," *quoting Peguero v. United States,* 526 U.S. 23, 28, 119 S.Ct. 1715, 143 L.Ed.2d 18 (1999); *See, also, Rodriguez,* 395 U.S. at 327 (When relief is granted on ineffective assistance of counsel claim for failure to file an appeal, defendant should be resentenced and right to direct appeal reinstated); *United States v. Peak,* 992 F.2d 39 (4th Cir. 1993); *Velasquez v. Grace,* 277 Fed. Appx. 258, 261 (3rd Cir. 2008) (Remedy for loss of a requested direct appeal is reinstatement of direct appeal rights); *Abels v. Kaiser,* 913 F.2d 821, 823 (10th Cir. 1990).  After Mr. Beter withdrew from his representation of VanHoose, VanHoose had the option to request a resentencing order and file a direct appeal. After consulting with counsel, he decided to forgo that option and proceed with a habeas action. When he lost on that claim in June 2006, the trial court entered a resentencing order, which reinstated VanHoose's right to appeal. Without explanation, VanHoose choose not to appeal at that time. After ruling against VanHoose on a successive habeas petition in 2008, the trial court entered a second resentencing order, again reinstating VanHoose's right to appeal. VanHoose filed an appeal, which was accepted for review by the WV Supreme Court

and ultimately denied. Consequently, the presumed prejudice flowing from counsel's failure to perfect the appeal has, at a minimum, been twice remedied.

Having thoroughly considered the matter, the undersigned **FINDS** that the WV Supreme Court's determination that VanHoose failed to establish the first prong of the *Strickland* test is not an objectively unreasonable application of, nor contrary to, clearly established federal law. Therefore, Respondent is entitled to summary judgment on this ground.

## VI.   <u>Proposal and Recommendations</u>

The undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** as follows**:**

1. Respondent's Motion for Summary Judgment (Docket No. 9) be **GRANTED**;

2. Petitioner's Petition for a Writ of Habeas Corpus by a Person in State Custody (Docket No. 1) be **DENIED;** and

3. That this action be **DISMISSED,** with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good

cause shown. Failure to file written objections as indicated shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner, the Respondent, and all counsel of record.

**FILED:** January 13, 2012.

Cheryl A. Eifert
United States Magistrate Judge