IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MEREDITH LEE VANHOOSE.

                Petitioner,

v.                                    CIVIL ACTION NO. 3:11-0448

EVELYN SEIFERT, Warden
Northern Correctional Center,

                Respondent.

**MEMORANDUM OPINION AND ORDER**

Petitioner Meredith Lee VanHoose, proceeding pro se, filed a Petition for a Writ of Habeas Corpus by a Person in State Custody Under 28 U.S.C. § 2254 (ECF No. 1). Respondent Evelyn Seifert, Warden of the Northern Correctional Institution, moved for Summary Judgment (ECF No. 9). This action was referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

The Magistrate Judge has submitted Findings of Fact and recommended that the Court deny Petitioner's application for habeas corpus relief filed pursuant to 28 U.S.C. § 2254, and grant Respondent's Motion for Summary Judgment. Having reviewed de novo the pleadings and Petitioner's objections, the Court **DENIES** Petitioner's objections. For the reasons given below, the Court **ADOPTS in part** the Magistrate Judge's Findings and **ADOPTS** the Magistrate Judge's Recommendations. Petitioner's Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED** and Respondent's Motion for Summary Judgment (ECF No. 9) is **DENIED as moot**.

**I.     Background**

The facts underlying the pending Petition are summarized here, and given more fully in the Magistrate Judge's Proposed Findings and Recommendations, ECF No. 13, at 2-8. Petitioner was indicted in September 1998 in Cabell County for the March 1998 murder of two men, James ("Nick") Flowers and Eric Smith. Police officers found Flowers and Smith shot in Petitioner's home after Petitioner and his wife called to report the shootings. Initially, both Petitioner and his wife, Michelle VanHoose, claimed that Michelle VanHoose had shot the men when they tried to sexually assault her. The next day, Petitioner called the police and changed his account of events, claiming that he, not his wife, shot Flowers and Smith. Later, Petitioner again took the position that his wife shot the two men.

Petitioner was arrested March 30, 1998, and indicted September 18, 1998. His first appointed attorney was replaced, and so the first trial date was set for January 6, 1999. On that date, Petitioner's new counsel moved for a continuance, over Petitioner's apparent objection. The trial was reset for May 11, 1999, then for May 18, 1999. On May 7, 1999, the State moved to continue the trial, having discovered that Petitioner's wife had filed for divorce in Kentucky, where the VanHooses had married, and wished to testify against her husband once the divorce was granted. *See* W. Va. Code § 57-3-3 ("In criminal cases husband and wife . . . shall [not] be compelled, nor, without the consent of the other, allowed to be called as a witness against the other[.]"). The trial court granted the motion, and later re-set the trial for August 24, 1999. That trial date was also continued on the basis that Petitioner's wife was not yet divorced, and thus not yet available to testify. On September 27, 1999, Petitioner filed a motion for a speedy trial, but the court continued the trial to January 25, 2000. On November 2, 1999, Petitioner renewed the motion. The trial was

again continued, and in January, February, and April 2000, the trial court held hearings on the status of the divorce proceedings and Michelle VanHoose's availability to testify. The trial court determined that she was still unavailable, and continued the trial to August 2000, and then September 2000. On September 7, 2000, one day before the scheduled trial date, Petitioner entered a conditional guilty plea. *See generally State v. VanHoose*, 705 S.E.2d 544 (W. Va. 2010) (opinion in Supreme Court of Appeals of West Virginia habeas proceeding); ECF No. 9, Exs. 1, 2, 5, 6 (state trial court proceedings and appellate briefs in state habeas proceedings); ECF No. 9, Ex. 9 (Petitioner's state habeas corpus petition); ECF No. 13, at 2-8 (Magistrate Judge's Proposed Findings and Recommendations).

Various appeals and collateral attacks followed at the state level, compounded by several changes in counsel, and problems with appointed counsel receiving notice of appointment. For the purposes of the present Petition, it is relevant mainly that the case eventually reached the Supreme Court of Appeals of West Virginia ("state court") on an appeal of the denial of Petitioner's state habeas corpus claim. The state court heard the matter and issued an opinion, holding, in relevant part, that the trial court's several continuances of Petitioner's trial date in order to permit his wife to testify at the trial did not violate his constitutional right to a speedy trial. *State v. VanHoose*, 705 S.E.2d 544 (W. Va. 2010).

Petitioner, having exhausted his state remedies, filed the present Petition for a Writ of Habeas Corpus by a Person in State Custody Under 28 U.S.C. § 2254 (ECF No. 1), in which he claimed the violation of two federal constitutional rights: the right to counsel and the right to a speedy trial. However, in his Objections (ECF No. 22), he abandoned the ineffective assistance of counsel claim and instead relied exclusively on his speedy trial claim. The Court therefore examines

only that claim.[1] In the Proposed Findings and Recommendations, the Magistrate Judge found that the state court identified and applied the correct standard for evaluating Petitioner's claim that he was deprived of his constitutional right to a speedy trial, and did not unreasonably apply the law. This Court agrees.

**2. Standard**

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") authorizes a federal court to review a petition for habeas corpus relief from a state prisoner claiming he is in custody in violation of the Constitution or laws or treaties of the United States. Where such claim was adjudicated on the merits in a state court proceeding, the reviewing federal court may not grant the writ unless the state court's determination was:

> 1) contrary to, or involves an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2) based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.

28 U.S.C. §§ 2254 (d)(1) and (2). This standard is "difficult to meet." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). Moreover, it is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

**3. Analysis**

Under this standard, Petitioner's claim must fail unless the state court's determination was "contrary to or involved an unreasonable application of clearly established federal law." 28 U.S.C.

---

[1] Petitioner is proceeding pro se, and many of his objections regarding his speedy trial claim are repetitive, or difficult to understand. In light of his pro se status, the Court will construe them broadly.

§ 2254 (d)(1). "Contrary to" and "involves an unreasonable application" of clearly established Federal law are two different inquiries. A decision may be "contrary to" clearly established federal law when a state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court decision may be an "unreasonable application" of clearly established federal law if "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87. "A habeas petitioner proceeding under § 2254 bears the burden of showing that he is entitled to habeas relief under this highly deferential standard." *Jones v. Seifert*, 808 F. Supp. 2d 900, 919 (S.D.W. Va. 2011) (Goodwin, C.J.) (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011)).[2] Here, there is no allegation that the state court's decision was "contrary to" established federal law; rather, Petitioner's alleges the state court's determination regarding his speedy trial claim was an "unreasonable application" of clearly established federal law.

### A

The state court's determination that Petitioner's Sixth Amendment right to a speedy trial was not violated is only an "unreasonable application" of existing law if it was "so lacking in

---

[2] Section § 2254 (d) also authorizes a federal court to grant a writ of habeas corpus if a state court determination is "based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding." 28 U.S.C. § 2254 (d)(2). Here, there is no allegation that the state court unreasonably determined that Petitioner invoked his statutory privilege to prevent his wife from testifying in his criminal trial, a fact well documented in the record, and the principal fact relied upon in the state court's holding that Petitioner's right to a speedy trial was not violated. Petitioner therefore raises no claim under § 2254 (d)(2).

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87.

Whether a defendant has been denied his federal constitutional right to a speedy trial under the Sixth Amendment is determined by applying the four-factor test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972).[3]  The four-pronged *Barker* analysis is a "balancing test," which "necessarily compels courts to approach speedy trial cases on an ad hoc basis."  *Barker*, 407 U.S. at 530.  Therefore, no one prong is dispositive.  The four factors are:

1) The length of the delay.  This factor is a "triggering factor."  *Id*. at 530-31.  If a defendant's pre-trial incarceration is more than one year, the delay is "presumptively prejudicial," in that it triggers the rest of the speedy trial analysis.

2) The reason for the delay.  "Closely related to the length of delay is the reason the government assigns to justify the delay . . . different weights should be assigned to different reasons."  *Id*. at 531.  Where the government purposefully delays the trial to hamper the defense, prejudice is highest, where the reason for delay is "more neutral," such as negligence or administrative delay, prejudice is slimmer, and a "valid reason, such as a missing witness," may justify the delay.  *Id*.

3) The defendant's assertion of his right to a speedy trial.  The defendant has a "responsibility" to assert this right.  This factor is closely related to the other factors, because defendants are more likely complain of more serious deprivations.  *Id*. at 531-32.

---

[3] West Virginia transposed the four-part *Barker* test into state law in *State v. Foddrell*, 297 S.E.2d 829 (W. Va. 1982).  Therefore, although the state court opinion in this case refers to its analysis as a "*Foddrell*" analysis rather than a *Barker* analysis, the standards are the same, and the decision clearly incorporates case law deriving from *Barker*.

4) The prejudice to the defendant from the delay. "Prejudice" under this prong is any substantial injury to those interests which the right to a speedy trial is designed to protect. *Id*. at 532. These interests are: 1) to prevent oppressive pretrial incarceration; 2) to minimize anxiety and concern of the accused; and 3) to limit the possibility that the defense will be impaired. Of these, the most important is the last. *Id*.

In deciding Petitioner's speedy trial claim, the state court analyzed the four *Barker* factors and determined that Petitioner's constitutional right to a speedy trial was not violated.

The court began with the first factor, length of delay, and determined that the length of the delay—approximately two years from indictment to trial date—was long enough to be presumptively prejudicial. The court gave the most weight to the second factor, the reason for the delay. The court determined that the Petitioner caused the delay by invoking his spousal testimonial privilege despite the fact that his wife had filed for divorce, thus preventing the appearance of a material witness. This factor weighed heavily against the Petitioner. The court found that the third factor, Petitioner's invocation of his right to a speedy trial, weighed in his favor, because the Petitioner filed several motions demanding a speedy trial. The last factor, the prejudice to Petitioner, weighed against his speedy trial claim, because although he claimed that two witnesses died during the delay, he did not identify who they were, nor what prejudice resulted from their deaths. *State v. VanHoose*, 705 S.E.2d 544, 552-57 (W. Va. 2010).

The state court, emphasizing the second factor, concluded, "considering all the factors as a whole, we find that Mr. VanHoose's right to a speedy trial was not violated because the delay was attributable to his conduct in preventing a material witness for the State from testifying." *Id*. at 557.

**B.**

The issue before this Court is whether the state court's conclusions involved an "unreasonable application of clearly established federal law." Petitioner does not contest the determination that the first and third factors of the *Barker* analysis weigh in his favor. He does object to the Magistrate Judge's findings regarding the second ("reason for delay") and fourth ("prejudice to defendant") *Barker* factors.

### 1. Reason for the delay.

Petitioner objects to the Magistrate Judge's finding that the state court properly considered this factor, and specifically to her statements that he was at fault for the delay because he impeded the proceedings of the divorce in Kentucky.[4] Although it is unclear from the record whether Petitioner did in fact delay the divorce proceedings, this determination is ultimately unnecessary because the state court's opinion clearly states that Petitioner's invocation of the privilege—not his delay of the divorce—made the trial delay attributable to him. The state court held that Petitioner's invocation of the spousal testimonial privilege was the reason for the delay:

> We agree with Mr. VanHoose that he did not have to waive his marital testimonial privilege so that Mrs. VanHoose could testify against him. However, we disagree with Mr. VanHoose's assertion that the State could not seek continuances until Mrs. VanHoose was available to testify against him. Insofar as Mr. VanHoose could invoke his statutory right to preclude his wife from testifying against him, the State could likewise invoke its right to seek continuances because of the unavailability of a material witness. See *Barker v. Wingo*, 407 U.S. 514, 531 (1972) ("[A] valid reason, such as a missing witness, should serve to justify appropriate delay."); *People v. Roberts*, 146 P.3d 589 (Colo. 2006) (no speedy trial violation where the

---

[4] Both Petitioner's pleadings in this Court (*see, e.g.*, ECF No. 22, at 6-7) and the Magistrate's Proposed Findings and Recommendations (ECF No. 13, at 18-19) address the issue of whether Petitioner purposefully delayed the Kentucky divorce proceedings in order to create a speedy trial claim. However, the written state court opinion attributes the delay to Petitioner's assertion of his spousal testimonial privilege, not to any malfeasance in trying to delay the divorce and prolong the privilege. Therefore, this Court does not adopt the Magistrate Judge's findings regarding the reasons for the delay of the divorce, as they are unnecessary to the resolution of this matter.

>reason for State seeking continuance was because material witness was giving birth); *State v. Nguyen*, 847 P.2d 936, 940 (Wash. 1993) ("The unavailability of a material State witness is a valid ground for continuing a criminal trial[.]").

*State v. VanHoose*, 705 S.E.2d 544, 555 (W. Va. 2010).

The state court's decision rested on its determination that the trial delay was caused by Petitioner's assertion of his spousal testimonial privilege, which kept his wife, a material witness, from testifying. Petitioner argues that the delay cannot be assigned to him because he repeatedly sought a speedy trial, and because in asserting his spousal testimonial privilege, he was exercising his statutory right to prevent his wife from testifying against him. Indeed, had Petitioner's wife not sought a divorce, Petitioner would have been able to assert his spousal testimonial privilege indefinitely—yet would still have had a right to a speedy trial.

In this case, however, Petitioner's wife had filed for divorce, so she was likely to become available to testify in a reasonable period of time. She was a material witness, as she was the only witness other than Petitioner to the double murder of which Petitioner stood accused. The trial delay was thus attributable to the unavailability of a material witness, which was in turn attributable to Petitioner's continued assertion of his expiring spousal testimonial privilege. Therefore, the state court's holding that the delay was caused by the unavailability of a material witness who was likely to become available within a the near future was reasonable. Under these facts, Petitioner cannot meet his heavy burden of demonstrating that the state court's determination was unreasonable application of clearly established federal law.

### 2. **Prejudice to Defendant**

Petitioner also objects to the Magistrate Judge's finding that the state court correctly analyzed the fourth *Barker* factor, prejudice to the defendant.

Courts consider three types of prejudice when evaluating whether a defendant was prejudiced by a pretrial delay, "1) whether there was an oppressive pretrial incarceration; 2) the anxiety and concern suffered by the accused; and 3) the possibility that the defense was impaired." *Barker*, 407 U.S. at 532. In this matter, Petitioner does not raise any claim that his incarceration was more oppressive, nor his anxiety greater, than anyone else awaiting trial for a double murder. Petitioner does, however, assert that his defense was impaired by the trial delay. *Barker*, 407 U.S. at 532.

In his Petition and Objections, Petitioner asserts that his defense was prejudiced because two material witnesses, Georgana Cook and Glen Verbage, died during the delay. In his state habeas appeal he simply asserted that two witnesses died during the delay, and did not identify who they were. The state court, therefore, could not evaluate any specific claim of prejudice to his defense. As this Court's § 2254 review of a state court habeas determination is "limited to the record that was before the state court that adjudicated the claim on the merits," *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011), new information about these two witnesses may not be considered in the present determination. Also, as noted in the Proposed Findings and Recommendations, it is apparent that even if Petitioner were allowed to pursue this evidence, no substantial prejudice could be shown. *See* ECF No. 13 at 25. Therefore, the state court's holding that it could not find prejudice against Petitioner based on a bare assertion that two unnamed witnesses had died was not an unreasonable application of clearly established federal law.

In sum, the state court's determinations regarding the second and fourth *Barker* factors were not "unreasonable applications" of law under § 2254. The Court therefore adopts the Magistrate Judge's findings in part, and adopts her recommendations. Petitioner's Petition for Habeas Corpus Relief (ECF No. 1) is **DENIED** and Respondent's Motion for Summary Judgment (ECF No. 9) is

**DENIED as moot**. Defendant's Motion for a Certificate of Appealability (ECF No. 23) will be addressed under separate cover. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:      March 30, 2012

        _____
        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE